**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LILLIAN GRAHAM, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 23-CV-4294 |
| | : | |
| FEMA, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM**

YOUNGE, J.                                                                                    **January 3, 2025**

Plaintiff Lillian Graham initiated this *pro se* civil action and seeks to proceed *in forma pauperis*. The Court previously dismissed her case without prejudice for failure to prosecute, but Graham returned with a request to reopen her case. For the following reasons, the Court will vacate its prior dismissal order, grant Graham leave to proceed *in forma pauperis*, and dismiss her Complaint in part with prejudice and in part without prejudice. She will be given an opportunity to file an amended complaint if she can correct the deficiencies noted by the Court as to the claims dismissed without prejudice.

## I.    FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[1]

### A.    Procedural History

Graham commenced this civil action on November 1, 2023, by filing an application to proceed *in forma pauperis* and a Complaint. (ECF Nos. 1, 2.) In accordance with the Court's procedures, upon initiation of this matter, the Clerk of Court mailed a copy of the Notice of Guidelines for Representing Yourself (Appearing "Pro Se") in Federal Court and a copy of the

---

[1] The allegations set forth in the Memorandum are taken from Graham's Complaint (ECF No. 2). The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

Pro Se E-Notice (Consent Form) to Graham at 2221 W. Tioga Street, Philadelphia, Pennsylvania 19140, which is the address Graham provided for herself in the Complaint.  (ECF No. 2 at 2; ECF No. 3.)  Before the Court had an opportunity to address Graham's filings, the Clerk's Office's mailings to Graham were returned on November 17, by the U.S. Postal Service and marked as "Return to Sender" and "Unable to Forward."  (*See* Docket entry dated November 17, 2023 and ECF No. 4.)  Consequently, in a November 28, 2023 Order, the Court directed Graham to provide a proper address for service in accordance with Local Rule 5.1(b), within fourteen days.[2]  (ECF No. 5.)  Graham was advised that the failure to do so could result in court orders or other information not being timely delivered, which could affect the parties' legal rights.  (*Id.*) She also was advised that if she failed to comply with the Order, her case may be dismissed without further notice for failure to prosecute.  (*Id.*)  Her motion to proceed *in forma pauperis* was denied without prejudice for lack of sufficient financial information.  (*Id.*)  The November 28 Order was mailed to Graham at the 2221 W. Tioga Street address and was returned to the court with the notations "Return to Sender" ad "No such Number."  (*See* ECF No. 6.)  Having received no response from Graham providing an updated address, a revised motion to proceed *in forma pauperis*, or any other communication from Graham since she submitted her Complaint, by Order dated February 12, 2024, this matter was dismissed without prejudice for failure to prosecute.  (ECF No. 7.)  That Order was also returned to the Court as undelivered.  (*See* ECF No. 8.)

---

[2] Local Rule 5.1(b) requires that a pro se litigant file "a physical address and an email address when available where notices and papers can be served."  A party has a continuing obligation to notify the Clerk within fourteen days of any change of address.  Because Graham did not provide a valid and/or updated address, the November 28 Order indicated that service of the order will be made pursuant to Fed. R. Civ. P. 5(b)(2)(D) by leaving the order with the Court Clerk through the docketing of the order.

On March 15, 2024, Graham filed a Praecipe to Reinstate the Complaint. (ECF No. 7.) Therein, Graham represented that she had not received "any mail that may have been sent to" her because "Postal System employees" were stealing her mail, "destroying some and returning some to return to sender." (*Id.* at 2.) She averred that "[t]hey were told to hold all of my mail by the USPS office in Washington, D.C., but refuse to do so." (*Id.*) She claimed that despite her request, her mail was not held from November 7, 2023 through February 21, 2024. (*Id.*) Graham indicated that the mail she was to receive, as well as the mail she sent, was stolen and the theft was to be investigated. (*Id.*) Graham also provided an updated address of P.O. Box 597, Feasterville, Pennsylvania 19053. (*Id.*)

By Order dated March 18, 2024, the Court denied Graham's request to re-open this matter. (ECF No. 10.) The Order was returned to the Court as undelivered with a notation that "moved left no address." (ECF No. 11.) Despite the Order being returned, Graham appealed the decision to not re-open her case. (ECF No. 12, 14.) On August 28, 2024, the United States Court of Appeals for the Third Circuit vacated the dismissal Order and remanded the case for further proceedings. (ECF No. 16); *see also Graham v. FEMA*, et al., C.A. No. 24-1708 (3d. Cir.). The Third Circuit directed this Court to consider whether Graham's motion to reinstate could be construed as asserting excusable neglect pursuant to Federal Rule of Civil Procedure 60(b)(1) and the factors in *Pioneer Inv. Services Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993) and *In re Cendent Corp. PRIDES Litig.*, 235 F.3d 176, 182 (3d Cir. 2000). (*Id.*)

Rule 60(b)(1) allows a court to provide a litigant relief from an order or final judgment upon a showing of excusable neglect. *See* Fed. R. Civ. P. 60(b)(1). Motions under this Rule must be made within one year of the entry of the order. Fed. R. Civ. P. 60(c)(1). In evaluating the basis for a Rule 60(b)(1) motion, courts consider: 1) the danger of prejudice to the

nonmovant; 2) the length of the delay and its potential effect on judicial proceedings; 3) the reason for the delay, including whether it was within the movant's control; and 4) whether the movant acted in good faith. *Orie v. Dist. Att'y Allegheny Cnty.*, 946 F.3d 187, 191 (3d Cir. 2019). When conducting this analysis, courts assess the totality of the circumstances. *Nara v. Frank*, 488 F.3d 187, 193-94 (3d Cir. 2007).

Applying these factors, the Court finds that Graham's failure to comply with the Court's November 28, 2023, Order directing her to provide a current address was due to excusable neglect. At this early stage of the litigation, no Defendant will be prejudiced by permitting the case to move forward to statutory screening under 28 U.S.C. § 1915(e)(2)(B). With regard to the second factor, Graham timely filed the Praecipe within one year of the dismissal of her case. As to the third factor, Graham represents that she did not receive the Court's mailings because her mail was not held by the U.S. Postal Service as instructed. (*See* ECF No. 9 at 2.) Indeed, she contends that her mail was not held from November 7, 2023 through February 21, 2024, and further alleges that U.S. Postal Service employees have stolen her mail. (*See id.*) This suggests that the delay in Graham's response to the Court was not within her control. Finally, the Court recognizes that Graham provided the Clerk of Court with an updated address, which is suggestive that she did not act in bad faith during her absence from the prosecution of her case. Consequently, the Court will grant Graham relief under Rule 60(b)(1) on the basis of excusable neglect and vacate its February 12, 2024 dismissal order.[3] Since Graham's Complaint is now ripe for review, the Court will screen the Complaint pursuant to 28 U.S.C. § 1915(e). In addition, because Graham was granted *in forma pauperis* status in a companion case, *see*

---

[3] This Court's March 18, 2024 Order already has been vacated. (*See* ECF No. 14, Mandate of the United States Court of Appeals for the Third Circuit.)

*Graham v. City of Phila.*, No. 23-4291, at ECF No. 16, the Court will permit her to similarly proceed *in forma pauperis* in this case.

**B.    Factual Allegations**

Turning to the Complaint, Graham appears to name nine Defendants in this case:  the City of Philadelphia; the Philadelphia Police Headquarters; France Henriques; the Federal Emergency Management Agency ("FEMA"); the PA Dept. of Aging; the "Human Relations Dept.;" the "Harrisburg and Pittsburg Fair Housing;" the "Dept. of Justice;" and the "District Attorney."[4]  (Compl. at 1-5.)  Although the factual allegations in Graham's Complaint are at times rambling and difficult to comprehend, the Court understands Graham to raise claims based on the demolition of her home and business.  (Compl. at 5.)

Specifically, Graham alleges that she had a 33-room building that housed six families and that was "severely damaged" during "major disasters Irene and tropical storm Lee."  (*Id*. at 6.) She further alleges that because of the damage to her home caused by the natural disasters, FEMA and other agencies that "were supposed to provide assistance" for storm-related damage, but discriminated against her by denying her assistance, allegedly because the City of Philadelphia told the agencies that Graham did not qualify.  (*Id*. at 7.)  Graham repaired much of the damage, but did not repair the window, heaters, chimneys and bearing wall.  (*Id*.)  Then in 2021, Hurricane Ida caused further damage to the bearing wall of Graham's home.  (*Id*.)  FEMA representatives told Graham "to have the contractor send them a letter in reference to the additional damage, and if [her] home was not repairable, [that] it would be replaced."  (*Id*. at 7-

---

[4]  As noted above, Graham submitted a very similar Complaint namely nearly identical parties in a separate matter before this Court.  *See Graham v. City of Phila.*, No. 23-4291, at ECF No. 2.

8.)  FEMA representatives also allegedly told Graham that the City of Philadelphia's intention to demolish her home "had nothing to do with a disaster."  (*Id*. at 8.)

An investigation of Graham's property allegedly commenced on October 7, 2021, after which time the City of Philadelphia's Department of Licenses and Inspections ("L&I") obtained a permit to demolish the property.  (*Id*.)  A letter was left on Graham's door before the demolition by an unnamed individual allegedly hired by L&I to "make [Graham's] home inhabitable."  (*Id*.)  Graham states that members of L&I broke into her home and stole money and personal property.  (*Id*. at 5.)  She further states that L&I was determined to demolish her home due to "another inspection" from Washington D.C. and because they continued to lie about the damage in her home.  (*Id*.)  She states that despite receiving a stay from the state court, her home was demolished without Graham first receiving a hearing.  (*Id*. at 6.)

Graham also alleges that the Pennsylvania Department of Aging and the " Human Relations Department," which the Court understands as a reference to the Pennsylvania Human Relations Commission ("PHRC"),[5] both ignored her and refused to enforce her human rights. (*Id*. at 4.)  She alleges that "Harrisburg and Pittsburg Fair Housing" refused to "take a complaint or investigate or assist with housing."[6]  (*Id*.)  Graham states that the "District Attorney" refused

---

[5] The address that Graham includes for the "Human Relations Department" is the address for the PHRC Executive Offices.  *See* https://www.pa.gov/en/agencies/phrc/contact-us.html (last accessed Nov. 27, 2024).

[6] The Court understands "Harrisburg and Pittsburg Fair Housing" to be a reference to the Fair Housing Council of the Capital Region, Inc. (the "Fair Housing Council") based on the address that Graham provided and the context of the allegations.  The Fair Housing Council is a non-profit company that has been designated by the Department of Housing and Urban Development ("HUD") as an "approved Housing Counseling Agency."  *See* https://www.pafairhousing.org/ (last accessed Nov. 27, 2024).  As background, "HUD has designated thousands of HUD-approved non-profit housing counseling agencies to provide assistance to consumers who are at risk of foreclosure or falling behind on their mortgage payments."  *F.T.C. v. Cantkier*, 767 F. Supp. 2d 147, 149 (D.D.C. 2011).  "These HUD-approved housing counseling agencies provide

to "take [her] criminal complaint" against L&I for "breaking into [her] home and business."[7]
(*Id*. at 5.)  She also states that the "Dept. of Justice," which the Court understands to be a
reference to the United States Department of Justice, a federal agency, "refuse[d] to enforce [her]
civil rights or even speak with [her]" despite calling them over 30 times.[8]  (*Id*. at 5.)  Graham
seeks monetary damages as relief.  (*Id*. at 12.)

## II.    STANDARD OF REVIEW

The Court grants Graham leave to proceed *in forma pauperis* because it appears that she
is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. §
1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether
a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard
applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher
v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether
the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is
plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  At this
early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true,
draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint
contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366,
374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115

---

[7] The Court understands Graham to be referring to the Philadelphia District Attorney.

[8] Graham lists an address for the Federal Courthouse as the address for the "Dept. of Justice." (Compl. at 4.)

services at no cost to homeowners, negotiating with lenders to make homeowners' mortgage
loans more affordable."  *Id*.  The Court notes, however, that the Fair Housing Council's website
indicates that it services the Harrisburg "tri-county community," and thus it is unclear how it was
involved in Graham's dispute in Philadelphia.

F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Because Graham is proceeding *pro se*, the Court construes her allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

The Court understands Graham to assert Fourteenth Amendment due process claims against Defendants in connection with the demolition of her home.[9]  The vehicle by which federal constitutional claims may be brought in federal court against state actors is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  The vehicle by which federal constitutional claims may be brought in federal court against federal actors is *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971).  As set forth below, Graham has failed to state a plausible claims against any of the named Defendants in her Complaint.

### A.    Claims against Phila. Police Dept. Headquarters

Graham names the "Phila. Police. Dept. Headquarters" as a Defendant.  She alleges in her Complaint that the "Police from the 39th District" accompanied individuals from L&I during the demolition of her home.  (Compl. at 6.)  Any constitutional claim Graham intends to assert against Phil. Police Dept. Headquarters must be dismissed.  A police department is a sub-unit of

---

[9] In addition to the Fourteenth Amendment, Graham also cites to the First Amendment.  The First Amendment protects an individual's rights to free speech, religious activity, and to petition government for redress of grievances.  The substance of any First Amendment claim Graham intends to assert is unclear from her Complaint.

the local government and, as such, is merely a vehicle through which the municipality fulfills its

policing functions. *See, e.g., Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878-79 (W.D. Pa.

1993). Thus, while a municipality may be liable under § 1983, a police department, as a mere

sub-unit of the municipality, may not. *Id.*; *Martin v. Red Lion Police Dept.*, 146 F. App'x. 558,

562 n.3 (3d Cir. 2005) (*per curiam*) (stating that police department is not a proper defendant in

an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality);

*Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) ("As in past cases, we treat the

municipality and its police department as a single entity for purposes of section 1983 liability"

(citing *Colburn v. Upper Darby Township*, 838 F.2d 663, 671 n.7 (3d Cir. 1988))). Furthermore,

agencies of the City of Philadelphia, such as the Philadelphia Police Department, do not have a

separate legal existence from the City. *See Vurimindi v. City of Philadelphia*, No. 10-88, 2010

WL 3169610, at *1 (E.D. Pa. Aug. 10, 2010) (observing that under 53 Pa. Cons. Stat. § 16257,

"no such department shall be taken to have had . . . a separate corporate existence, and hereafter

all suits growing out of their transaction . . . shall be in the name of the City of Philadelphia");

*Gremo v. Karlin*, 363 F. Supp. 2d 771, 780-81 (E.D. Pa. 2005) (dismissing City of Philadelphia

Police Department and the City of Philadelphia Police Department Northeast Detective

Division). Accordingly, any claims against Phila. Police. Dept. Headquarters are not plausible

and must be dismissed with prejudice.

**B.      Claims Against The Pennsylvania Department of Aging and the PHRC**

Graham also names as Defendants the Pennsylvania Department of Aging and the

"Human Relations Dept.," which the Court construes as the PHRC. (Compl. at 4.) The

Commonwealth of Pennsylvania, including its departments and agencies, is not considered a

"person" who may be liable under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58,

65-66 (1989). Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court when the state has not waived that immunity, *id.*, and the Commonwealth of Pennsylvania has not waived that immunity for claims under § 1983. *See* 42 Pa. Cons. Stat. § 8521(b). The Pennsylvania Department of Aging and the PHRC, as agencies of the Commonwealth, share in the Commonwealth's immunity, and neither is a "person" for purposes of § 1983. *Gary v. Pennsylvania Hum. Rels. Comm'n*, 497 F. App'x 223, 226 (3d Cir. 2012) (*per curiam*) ("As a state agency, the PHRC and its employees, acting in their official capacities, are entitled to sovereign immunity as to Gary's federal claims, and they were properly dismissed."); *Schneller v. Fox Subacute at Clara Burke*, No. 06-1504, 2009 WL 1838354, at *7 (E.D. Pa. June 25, 2009) (dismissing § 1983 claims against the Pennsylvania Department of Aging under Eleventh Amendment immunity). Accordingly, Graham's claims against the Pennsylvania Department of Aging and the PHRC must be dismissed with prejudice because those claims are not plausible.

### C.    Claims against the Philadelphia District Attorney

Graham also names the Philadelphia District Attorney, claiming that the Office refused to file a criminal complaint on her behalf against L&I, despite L&I committing "burglary, grand larceny, and trespassing." (Compl. at 5.) It is well established that private citizens have no constitutional right to compel law enforcement to arrest or prosecute an individual or entity who allegedly committed a crime. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (finding that a citizen lacks standing to contest prosecutorial policies "when he himself is neither prosecuted nor threatened with prosecution") (citations omitted); *Lewis v. Jindal*, 368 F. App'x 613, 614 (5th Cir. 2010) ("It is well-settled that the decision whether to file criminal charges against an individual lies within the prosecutor's discretion, and private citizens do not have a constitutional right to compel criminal prosecution.") (citations omitted); *Smith v. Friel*, No. 19-

943, 2019 WL 3025239, at *4 (M.D. Pa. June 4, 2019), *report and recommendation adopted*,

2019 WL 3003380 (M.D. Pa. July 10, 2019) (collecting cases and stating "courts have long held

that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing

the criminal prosecution of some third parties").  Because Graham has no right to demand the

filing of a criminal complaint, she cannot state a plausible claim against the District Attorney.

Her claims against the District Attorney will therefore be dismissed with prejudice.

### D.    Claims against FEMA and the Department of Justice

Graham also asserts a due process claim against Defendants FEMA and the Department

of Justice, two federal agencies, under the Fifth Amendment.  As noted above, *Bivens* provides a

damages remedy for constitutional violations committed by federal actors in very limited

circumstances.  *Egbert v. Boule*, 596 U.S. 482, 486 (2022); *Ziglar v. Abbasi*, 137 S. Ct. 1843,

1854 (2017).[10]  Since *Bivens* was decided in 1971, the Supreme Court has expressly recognized

an implied cause of action in only three types of cases, *see Abbasi*, 137 S. Ct. at 1854-55, and

"has repeatedly refused to recognize *Bivens* actions in any new contexts."  *Vanderklok v. United

States*, 868 F.3d 189, 199 (3d Cir. 2017); *see also Egbert*, 596 U.S. at 486, 501-02.  "To preserve

the separation of powers, the Court has 'consistently rebuffed' efforts to extend *Bivens* further . .

[because] [t]he Constitution entrusts Congress, not the courts, with the power to create new

federal causes of action and remedies."  *Dongarra v. Smith*, 27 F.4th 174, 180 (3d Cir. 2022)

(citing *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020)); *see also Xi v. Haugen*, 68 F.4th 824, 832

---

[10] Historically, federal law has provided a damages remedy to individuals whose constitutional rights were violated by *state* officials.  *See* 42 U.S.C. § 1983.  In *Bivens,* the Supreme Court for the first time implied such a cause of action for constitutional violations by federal officials, holding that "even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the [Fourth Amendment] prohibition against unreasonable search and seizures."  *Abbasi*, 137 S. Ct. at 1854.

(3d Cir. 2023) ("In the fifty-two years since *Bivens* was decided, . . . the Supreme Court has pulled back the reins to what appears to be a full stop and no farther.").

The Court is unaware of any cases in which a Court has extended a *Bivens* remedy to Fifth Amendment due process claims in connection with the demolition of property. Even assuming that a *Bivens* remedy is available in this context, any *Bivens* claims Graham intends to assert must nevertheless be dismissed because she has only named defendants that are immune from *Bivens* liability. *Bivens* claims may not be brought against the United States or federal agencies. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) (*per curiam*) ("*Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver."); *Ynfante v. United States*, No. 13-767, 2015 WL 631055, at *5 (M.D. Pa. Feb. 12, 2015) ("[A] *Bivens* claim can only be asserted against individual officials."). FEMA and the Department of Justice are federal agencies and thus immune from suit under *Bivens*. *See Keys v. U.S. Dep't of Just.*, 285 F. App'x 841, 842 (3d Cir. 2008) (*per curiam*) ("As the District Court explained, Keys cannot maintain a *Bivens* action against the United States Department of Justice, a federal agency."); *Banks v. United States*, No. 05-6853, 2007 WL 1030326, at *7-8 (E.D. La. Mar. 28, 2007) (dismissing *Bivens* claim against FEMA "because *Bivens* claims are not available against a federal agency"). Accordingly, Graham's *Bivens* claims asserted against FEMA and the Department of Justice must be dismissed with prejudice.

### E.     Claims against Fair Housing Council of the Capital Region

Graham names "Harrisburg and Pittsburg Fair Housing," understood by the Court to be a reference to the Fair Housing Council, a HUD-approved non-profit counseling agency, because it

12

"refuse[d] to take a complaint or investigate or assist with housing." (Compl. at 4.) As noted above, to state a plausible § 1983 claim, a plaintiff must allege a constitutional deprivation committed by *a person acting under color of state law*." *West*, 487 U.S. at 48 (emphasis added). Whether a defendant is acting under color of state law—i.e., whether the defendant is a state actor—depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the United States Court of Appeals for the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

Graham has not included any facts about the Fair Housing Council's specific involvement in her alleged constitutional harm aside from the allegation that it failed to file a complaint, investigate, or more vaguely, assist with housing. Graham has not alleged any facts to suggest that the Fair Housing Council exercises powers that are traditionally attributed to the state. Nor has she alleged any other facts to support an inference that the Fair Housing Council is a state actor under the tests developed by the Third Circuit in *Kach*. *See, e.g., White v. Pagotto*, No. 22-3257, 2023 WL 4929306, at *2 (3d Cir. Aug. 2, 2023) (*per curiam*) (affirming the dismissal of § 1983 claims where plaintiff "made no allegations showing that the named defendant, Bethesda Project, Inc., [manager of a subsidized housing program where plaintiff

lived] is a state actor"); *Bell v. SELF Inc.*, No. 23-3646, 2023 WL 7004419, at *3 (E.D. Pa. Oct. 24, 2023) ("[A]ny constitutional claims cannot proceed because the named Defendants – a private non-profit organization and its emergency housing site – are not state actors subject to suit under § 1983."); *Johnson v. Bridge*, No. 14-884, 2014 WL 2711795, at *1 (E.D. Mo. June 16, 2014) (dismissing § 1983 claims against non-profit organization where the plaintiff alleged only that the non-profit receives state funds).  Accordingly, Graham has failed to allege that the Fair Housing Council is a state actor subject to liability under § 1983.

Even if Graham had sufficiently pled state action, the claims against the Fair Housing Council would nevertheless be dismissed.  Non-profit organizations, like municipalities, will not be liable under § 1983 for the acts of its employees under a theory of *respondeat superior*.  Non-profit organizations can only be liable under § 1983 when an official policy or custom of the non-profit organization causes the deprivation of constitutional rights.  *See Kirby v. Visionquest Nat'l, Ltd.*, No. 15-6208, 2016 WL 1623439, at *3 (E.D. Pa. Apr. 25, 2016) (applying standard for municipal liability from *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978), to § 1983 claims asserted against a non-profit company).  Graham alleges no facts suggesting that her alleged constitutional harms were caused by a Fair Housing Council policy or custom. Moreover, any claims based on the Fair Housing Council's alleged failure to investigate or file a complaint would nevertheless fail because there is no constitutional right to an investigation.  *See Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation."); *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) ("[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." (quotations omitted)). Accordingly, Graham's § 1983 claims against the Fair Housing Council must be dismissed.  The

Court will permit Graham to amend her claims against the Fair Housing Council in the event she can allege facts that not only support a plausible inference of state action but also a plausible inference of an underlying constitutional violation arising from her allegation that the Fair Housing Council failed to assist her with housing.

### F.    Claims against the City of Philadelphia

Graham also names the City of Philadelphia as a Defendant and alleges that the City, including its L&I Department, demolished her property and lied about the level of damage at the property before demolishing it.  Because Graham cites to the Fourteenth Amendment, the Court understands her to assert procedural due process claims against the City.  To plead a basis for municipal liability against a city or other municipality under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  It is not enough, however, to allege the existence of a policy or a custom.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries."  *Est. of Roman v. City of* Newark, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

Nowhere in the Complaint does Graham allege that the conduct of which she complains resulted from a municipal policy or custom.  Graham's conclusory assertion that her Fourteenth Amendment rights were violated is not sufficient.  *See, e.g*., *Phillips v. Northampton Co., P.A.*, 687 F. App'x 129, 132 (3d Cir. 2017) (affirming dismissal of *Monell* claims where the complaint

contained "wholly conclusory and highly generalized assertions about unspecified patterns of misconduct" based on "no facts to support the existence of any policy, custom, or practice beyond those involving [the plaintiff's] own [experiences]").  Accordingly, any Fourteenth Amendment claim Graham intends to assert against the City of Philadelphia is not plausible and must be dismissed without prejudice.

### G.    Claims against France Henrique

Graham also names France Henrique as a Defendant and lists his "Job or Title" on the standard form complaint as "Demolition Co."  Besides listing Henrique as a Defendant, Graham includes no other facts about Henrique in the Complaint.  In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).  Graham also has not alleged any facts about whether Henrique is a state actor.  Even assuming that Henrique is a state actor subject to liability under § 1983, Graham has not alleged sufficient facts about Henrique's involvement in the events substantiating her alleged claims.  Accordingly, the claims against Henrique will be dismissed without prejudice.  The Court will permit Graham to amend her claims against Henrique in the event she can allege facts that support a plausible inference that Henrique is a state actor and violated Graham's constitutional rights.

## IV.    CONCLUSION

For the foregoing reasons, the Court will vacate its order dismissing this case, grant Graham leave to proceed *in forma pauperis*, and dismiss her Complaint in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Graham's claims against the Philadelphia Police Headquarters, the Department of Aging,

the "Human Relations Dept.," which the Court construes as the PHRC, the Philadelphia District

Attorney, FEMA, and the Department of Justice will be dismissed with prejudice. Her

remaining claims against the "Harrisburg and Pittsburg Fair Housing," which the Court construes

as the Fair Housing Council of the Capital Region, Inc., France Henriques, and the City of

Philadelphia will be dismissed without prejudice. Graham will be given the opportunity to file

an amended complaint to reallege the claims that have been dismissed without prejudice. An

appropriate order follows, which contains additional instructions as to amendment.[11]

BY THE COURT:

___/s/ John Milton Younge_____
JOHN MILTON YOUNGE, J.

---

[11] On the same day she commenced the case at bar, Graham filed another Complaint with this Court that also appears to raise claims based on the demolition of her home. *See Graham v. City of Philadelphia*, Civil Action No. 23-4291 (E.D. Pa.). Her Complaint in that case was dismissed without prejudice to filing an amended complaint. *Id.*, at ECF Nos. 15, 16. Graham was advised in that case that she may not present the same claims, based on the same events, in two separate civil actions. "Repetitious litigation of virtually identical causes of action may be dismissed under § 1915 as frivolous or malicious." *Banks v. County of Allegheny*, 568 F. Supp. 2d. 579, 589-90 (W.D. Pa. 2008); *see also Washington v. Gilmore*, 825 F. App'x 58, 60 n.2 (3d Cir. 2020) (*per curiam*) ("A Court may choose to dismiss a duplicative claim as frivolous or malicious. . . ."). Moreover, as part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation."); *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (*en banc*) (stating that the plaintiff "had no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant"); *see also Fabics v. City of New Brunswick*, 629 F. App'x 196, 198-99 (3d Cir. 2015) (*per curiam*) (affirming dismissal of second pending action as duplicative); *McKenna v. City of Philadelphia*, 304 F. App'x 89, 92-93 (3d Cir. 2008) (same). If Graham files an amended complaint in this matter, the Court will consider if it is repetitious or duplicative of Civil Action No. 23-4291.